## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### Case No. 3:24-cv-00602

| | | |
|---|---|---|
| **LIFE BUTTER, LLC,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **v.** | ) | **BRIEF IN SUPPORT OF** |
| | ) | **DEFENDANT** |
| **BPI EQUIPMENT, INC.,** | ) | **BPI EQUIPMENT, INC.'S** |
| | ) | **MOTION TO DISMISS** |
| *Defendant.* | ) | |
| | ) | |
| | ) | |
| | ) | |

Pursuant to Local Rule 7.1(c), Defendant BPI Equipment, Inc. ("BPI Equipment") submits this Memorandum of Law in support of its Motion to Dismiss Plaintiff's Complaint (ECF No. 1-1 (the "Complaint")) for failure to state a claim upon which relief can be granted.

### BOTTOM LINE UP FRONT

This is a warranty case arising out of the sale of an ST100 Die Cut Bagger Machine (the "Machine") from BPI Equipment to Abby's Better, Inc. ("Abby's Better") for $95,075.00 pursuant to a December 19, 2022 sales agreement (the "Agreement"). In its Complaint, Plaintiff Life Butter, LLC ("Life Butter"), which claims to have taken ownership of the Machine by way of an assignment from Abby's Better (Compl. ¶ 5), alleges that the Machine is "wholly unusable, unsustainable, and simply does not work" and appears to seek a complete "refund[]" of the $95,075.00 purchase price (*see, e.g.*, Compl. ¶¶ 58, 72).

In fact, there has been no breach of warranty, as evidenced by the fact that Life Butter has not identified a single specification in the Agreement that the Machine does not meet. Moreover, Life Butter has ignored the plain language of the very warranty it seeks to enforce, which (i) expressly excludes from coverage the "operation and efficiency of the [Machine]" and instead is

limited to defective parts; (ii) contains a valid and conspicuous waiver of all implied warranties pursuant to Ind. Code Ann. § 26–1–2–316(2); and (iii) contains a valid limitation of damages under Indiana Ind. Code Ann. § 26-1-2-316(4) limiting BPI Equipment liability to "the cost of correcting any . . . defect or replacing the defective part, whichever is the least costly." (Compl. ¶ 24, Ex. A at Terms and Conditions ¶ 8.) But "[t]he existence of a warranty does not transform any unpleasantness into a cause of legal action; rather, a warranty is only breached when the buyer is not afforded the protections he was promised." *Raymond v. Thor Motor Coach Inc.*, No. 3:21-CV-222 JD, 2023 WL 4930105, at *6 (N.D. Ind. Aug. 2, 2023).[1]

And finally, even if the Machine had a defect (which it does not), neither Abby's Better nor Life Butter has ever given BPI Equipment a reasonable opportunity to repair or cure any such defect, as is required to prevail on a warranty claim. *See Zylstra v. DRV, LLC*, 8 F.4th 597, 609 (7th Cir. 2021). Indeed, based on its own allegations, Abby's Better gave BPI Equipment just two opportunities to "set up, install, and train Abby's [Better]'s staff on the Machine use" before it simply gave up and deemed the Machine "wholly unusable." (*See* Compl. ¶¶ 46-55.) "In Indiana, even two chances to cure a defect isn't a reasonable opportunity to cure." *See Litsinger v. Forest River, Inc.*, 536 F. Supp. 3d 334, 367 (N.D. Ind. 2021).

For all of these reasons, Life Butter's Complaint fails to state a claim upon which relief can be granted as a matter of law and should be dismissed *with prejudice*.

---

[1] The Agreement contains a valid Indiana choice of law provision (*see* Compl. Ex. A at Terms and Conditions ¶ 17) which should be given effect. *See, e.g., Mageba Textilemashcinen GmbH & Co. KG v. Archibald*, No. 3:12-cv-00126-FDW, 2012 WL 2568075, at *2 (W.D.N.C. July 2, 2012).

# FACTUAL BACKGROUND[2]

On or about December 19, 2022, Abby's Better – which is not a party to this lawsuit – entered into an Agreement with BPI Equipment for the purchase of a Machine which it could use to fill squeeze packs with the nut butter it produced. (Compl. ¶¶ 16-18.) In their Agreement, the parties acknowledged that the Machine was a "specialized good[] that [was being] manufactured in part specifically for [Abby's Better]," and Abby's Better expressly agreed that the Agreement was "not assignable . . . without [BPI Equipment's] prior written consent." (Compl. ¶ 24, Ex. A at Terms and Conditions ¶¶ 10(e) and 16.)

As part of their Agreement, BPI provided an express warranty to Abby's Better (the "Warranty"), which provided, in relevant part, as follows:

- "[BPI Equipment] manufactured parts are warranted for a period of 12 (twelve) months from shipment . . . provided defects and/or failed results are from normal use of the [Machine]."

- "[BPI Equipment] does not warrant in any way the results on the use of, or attempts to use the [Machine], as the operation and efficiency of the [Machine] is very subjective and influenced by factors beyond [BPI Equipment's] control including, but not limited to, the operator's competence and working environment."

- "The [W]arranty contained hereby is expressly in lieu of (i) all other legal or conventional warranties, whether express or implied, and (ii) all other obligations or liabilities of [BPI Equipment]."

- "[BPI Equipment] makes no warranty, implied, and/or expressed, of merchantability or fitness for any particular purpose other than the operating capabilities of the [Machine], it being understood and accepted by all parties hereto that [BPI Equipment's] liability arising out of any defects in the [Machine] shall not exceed the cost of correcting any such defect or replacing the defective part, whichever is the least costly."

(Compl. ¶ 24, Ex. A at Terms and Conditions ¶ 8.)

---

[2] BPI Equipment disputes many of Life Butter's allegations but for purposes of this Motion, has accepted the allegations of Life Butter's Complaint as true. BPI Equipment reserves its right to contest all such allegations in the future.

After the parties entered into the Agreement, Abby's Better provided BPI Equipment with product samples that "Abby's [Better] intended to produce on a mass scale" in order to "ensure the Machine worked as intended and contemplated by Abby's [Better]." (Compl. ¶¶ 35-36.) Then, over the course of several months, representatives of Abby's Better met repeatedly in person and via Zoom for "product testing" of the Machine in order to "spec[] the Machine to fit the identical product samples that Abby's [Better] furnished to [BPI Equipment]." (Compl. ¶¶ 38-44 (emphasis added).) Ultimately, on May 10, 2023, the Machine was delivered to Abby's Better's manufacturing warehouse. (Compl. ¶ 46.)

Ten months later, on or about March 1, 2024, Life Butter alleges that Abby's Better, unbeknownst to BPI Equipment and in violation of the Agreement's non-assignment clause, purportedly "conveyed, assigned, and transferred its rights, title, and interest in the Machine to [Life Butter]." (Compl. ¶ 5.) As a result, Life Butter claims that it now "stands in the shoes of Abby's [Better]," and it has brought claims against BPI Equipment for breach of contract and breach of express and implied warranties, all of which arise out of Abby's Better's Agreement with BPI Equipment.[3] (Compl. ¶ 5.)

In support of its claims, Life Butter alleges that BPI Equipment visited <u>Abby's Better</u> on just two occasions (May 10-12, 2023 and June 20-22, 2023). (*See* Compl. ¶¶ 47–55).[4] And neither visit was for the purpose of repairing any identified defect under the Warranty. Rather, BPI Equipment visited Abby's Better on May 10-12, 2023 (just 10 days after delivery) to "set

---

[3] For purposes of this Motion to Dismiss, BPI Equipment accepts as true Life Butter's conclusory allegation that it "stands in the shoes of Abby's [Better]," as BPI Equipment has no knowledge regarding the purported "assignment." BPI Equipment expressly reserves its right, however, to contest this legal conclusion in the future.

[4] The Complaint mistakenly identifies the date of this second visit as beginning on June 20, 2024, but this is approximately one month after Life Butter filed its Complaint and cannot be accurate. The correct date is June 20, 2023.

up, install, and train Abby's staff on the Machine's use." (Compl. ¶ 47.) According to Life Butter, the Machine "did not work as intended" during this visit. (Compl. ¶ 49.) But this is typical when a piece of equipment is installed after shipment, and was expressly disclosed to Abby's Better in the Agreement. The Agreement states that the Machine "may require debugging and/or modifications due to factors beyond the Seller's control" after delivery, including, among other things, "rough handling during transport" and adjustments for the particular "production environment." (*See* Compl., Ex. A at Terms and Conditions ¶ 7.)

As a result, it should not have come as a surprise that the Machine did not "consistently function or remain operational" during this initial visit. (*Cf.* Compl. ¶ 7 *with* Compl. Ex. A at Terms and Conditions ¶ 7 ("Situations [after delivery] may cause the [Machine] to malfunction and operate inefficiently and/or not operate or produce as efficient, or as expected, or as intended by the Buyer.").) BPI Equipment then scheduled a second visit on June 20, 2023 to complete the installation and training. (Compl. ¶¶ 51-55.)

Importantly, Life Butter filed this lawsuit without having identified any specific part that it believes is defective under the Warranty or having given BPI Equipment any further opportunity to inspect or repair the Machine. Instead, Life Butter alleges that the Machine "simply does not work." (Compl. ¶ 58.) And, based solely on this alleged fact, Life Butter claims that BPI Equipment has breached its warranties to Abby's Better by not "refunding or replacing the Machine at [BPI Equipment's] expense." (Compl. ¶ 72.) But in doing so, Life Butter ignores the fact that BPI Equipment did not warrant the "operation and efficiency" of the Machine, as well as the fact that the Warranty is expressly limited to the "cost of correcting any . . . defect or replacing the defective part." (Compl. ¶ 72.)

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In considering such a motion, the "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). But the Court should not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Id*.

## ARGUMENT

Life Butter has asserted four claims against BPI Equipment: (i) Breach of Contract; (ii) Breach of Warranty; (iii) Breach of the Implied Warranty of Merchantability; and (iv) Breach of the Implied Warranty of Fitness for a Particular Purpose. All of these claims are based on the bare assertion, without any further factual enhancement, that "the Machine is wholly unusable, unsustainable, and simply does not work." (*See* Compl. ¶¶ 58, 62, 71, 79, 89, 93.) Indeed, Life Butter has not identified (i) any specification in the Agreement that the Machine fails to meet, (ii) any defective part of the Machine that would be covered by the Agreement's Warranty, or (iii) any specific industry standard that the Machine fails to meet that would suggest the Machine is not merchantable or fit for its intended purpose. And, most importantly, Life Butter, by its own admission, has not given BPI Equipment a reasonable opportunity to inspect and repair the Machine as required by the Warranty and as a matter of well-established Indiana law.

The Agreement's terms are clear: BPI Equipment's express warranty is limited to the repair and replacement of defective parts; BPI "does not warrant in any way the results on the

use of, or attempts to use the [Machine]"; and BPI "makes no warranty . . . of merchantability or fitness for any particular purpose." (*See* Compl., Ex. A at Terms and Conditions ¶ 8.)  Given this clear and unambiguous language, Life Butter's conclusory allegations that the Machine "simply does not work" fails to state any valid claim upon which relief can be granted.   Accordingly, as discussed below, Life Butter's claims fail as a matter of law and should be dismissed *with prejudice*.

## I.  Life Butter's Breach of Contract claim fails as a matter of law because it is duplicative of Life Butter's Breach of Warranty claim.

In support of its Breach of Contract claim, Life Butter does not identify any contractual provision that BPI Equipment allegedly breached.  Instead, Life Butter alleges that BPI Equipment "fail[ed] to . . . install a Machine that would consistently produce packaged die-cut sachets filled with nut butter, fail[ed] to provide adequate training for the use of the Machine, and fail[ed] to fix or otherwise remedy the defects within the Machine." (*See* Compl. ¶ 62.)  Life Butter bases its Breach of Warranty claim on nearly identical allegations, and the same overarching issue (i.e., the Machine's alleged "defects"). (*Cf.* Compl. ¶ 62 *with* Compl. ¶¶ 71-72.)  As such, Life Butter's Breach of Contract claim is nothing more than "a mere repackaged warranty claim." *See Litsinger*, 536 F. Supp. 3d at 359 ("Though contract and warranty claims may be different, under the circumstances here, the [plaintiff] cannot sustain a separate contract claim. . . .").

It is true that, under Indiana law, a claim for breach of contract and breach of warranty can be distinct. *See, e.g., Zawistoski v. Gene B. Glick Co.*, 727 N.E. 2d 790, 792 (Ind. Ct. App. 2000).  However, "when a plaintiff is seeking relief through both actions based on the same contractual provision—as here—they are the same." *Smith v. Nexus RVs, LLC*, 468 F. Supp. 3d 1012, 1024 (N.D. Ind. 2020) (finding that plaintiffs could not bring an independent claim for

7

breach of contract); *see also Litsinger*, 536 F. Supp. 3d at 359 ("Though contract and warranty claims may be different, under the circumstances here, the [plaintiff] cannot sustain a separate contract claim. . . ."). That is the case here, and Life Butter's Breach of Contract claim should therefore be dismissed.[5] *See id.*

## II. Life Butter's Breach of Warranty claim fails as a matter of law because Life Butter has not alleged any facts to support a finding that BPI Equipment breached the Warranty's terms.

To state a claim for breach of express warranty, a plaintiff must allege facts showing "(1) the existence of a warranty; (2) breach of that warranty; and (3) that the breach was the proximate cause of the loss sustained." *Swan Lake Holdings, LLC v. Yamaha Golf Cart Co.*, No. 3:09-CV-228-PPS, 2010 WL 3894576, at *3 (N.D. Ind. Sept. 27, 2010) (compiling Indiana cases). Moreover, to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege those elements using "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In this case, Life Butter has not alleged any facts that would establish a breach of the terms of the Warranty at issue.

The Agreement's Warranty, by its terms, provides that "[t]he Seller manufactured <u>parts</u> are warranted for a period of 12 (twelve) months from shipment or 2000 (two thousand) hours of use, whichever comes first, provided defects are from normal use of the Product(s)." (Compl., Ex. A at Terms and Conditions ¶ 8 (emphasis added).) It further states that "<u>nonfunctioning or</u>

---

[5] BPI Equipment recognizes that Life Butter's allegation that it failed to "provide adequate training" appears only in the Breach of Contract claim and not the Breach of Warranty claim. To the extent that Life Butter attempts to suggest that this allegation gives rise to an independent claim for breach of contract, it should be noted that there is nothing in the Agreement that imposed any contractual obligation on BPI Equipment to provide training. Moreover, given Life Butter's allegation that the "deficiencies in the Machine were not due to the operational error or fault of Abby's [Better] or the Plaintiff," there is no factual basis for any such claim based on Life Butter's own pleadings.

defective parts must be returned prepaid to the Seller for evaluation," and that the price of the replacement part will be credited if the warranty applies. (*Id.* (emphasis added).) Life Butter, however, has not identified any defective part.

Instead, Life Butter claims that the Machine "fails to adequately package squeeze packs, spews/leaks nut butter product, produces substandard packaging, and fails to consistently produce marketable goods for consumer consumption." (Compl. ¶ 71.) But the Warranty expressly provides that BPI Equipment "does not warrant in any way the results on the use of, or attempts to use the Product(s), as the operation and efficiency of the Product(s) is very subjective and influenced by factors beyond the Seller's control including, but not limited to the operator's competence and working environment." (Compl., Ex. A at Terms and Conditions ¶ 8.) Rather, it requires BPI Equipment to replace defective parts.

"The existence of a warranty does not transform any unpleasantness into a cause of legal action; rather, a warranty is only breached when the buyer is not afforded the protections he was promised." *Raymond*, 2023 WL 4930105, at *6. Here, the Warranty promises to replace defective parts free of charge. The Complaint does not allege that BPI Equipment ever refused to replace a part or otherwise broke this promise. Rather, Life Butter claims that BPI Equipment has breached the Warranty by not "refunding or replacing the Machine at [BPI Equipment's] expense." (Compl. ¶ 92.) This is contrary to the Warranty's express terms, and Life Butter's claim for Breach of Express Warranty should therefore be dismissed.

**III.**     <u>**Life Butter's Breach of Implied Warranty claims fail as a matter of law because the Warranty expressly disclaimed all implied warranties.**</u>

As for Life Butter's claims for Breach of the Implied Warranty of Merchantability and the Implied Warranty of Fitness for a Particular Purpose, the Warranty expressly disclaims both of these implied warranties, in <u>two</u> separate instances:

The warranty contained hereby is expressly in lieu of (i) all other legal or conventional warranties, whether express or implied, and (ii) all other obligations on the part of the [BPI Equipment].

. . . .

The Seller makes no warranty, implied and/or expressed, of merchantability or fitness for a particular purpose other than the operating capabilities of the [Machine], it being understood and accepted by all parties hereto that [BPI Equipment's] liability arising out of any defects in the [Machine] shall not exceed the cost of correcting any such defect or replacing the defective part, whichever is the least costly."

(Compl., Ex. A at Terms and Conditions ¶ 8.)  The sentences are not in smaller text than the rest of the Warranty; they are not buried in a footnote or hidden on a separate page; and they are clear.  As such, they should be given the same effect as the rest of the Warranty.

Article 2 of the Uniform Commercial Code, as adopted by Indiana, allows sellers to modify or contract out of both express and implied warranties.  *See* Ind. Code Ann. § 26–1–2–316; *see also, e.g., Indiana Farm Bureau v. CNH Indus. Am., LLC*, 130 N.E.3d 604, 611 (Ind. Ct. App. 2019) (enforcing a disclaimer).  Ind. Code Ann. § 26–1–2–316(2) provides that "to exclude or modify the implied warranty of merchantability . . . the language must [only] mention merchantability and in case of a writing must be conspicuous."  Similarly, to exclude any implied warranty for fitness of a particular purpose, the exclusion must "only be by a writing and conspicuous."  Ind. Code Ann. § 26–1–2–316(2).  And, "unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is', 'with all faults,' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty."  *Id.* (emphasis added).

The Warranty at issue in this case does all three: it mentions both the implied merchantability and fitness for a particular purpose, it uses language that "makes plain there is no implied warranty," and it is conspicuous.  Ind. Code Ann. § 26-1-1-201(10) provides that a "term

or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it." Life Butter claims that the Disclaimer is "inconspicuous" because it is not written in capitals or contrasting font from the rest of the Warranty clause it is trying to enforce. (Compl. ¶¶ 76, 87). But it cannot suggest that the disclaimer is hidden or that it "ought [not] to have noticed it." Indeed, it is part and parcel of the very Warranty Life Butter is trying to enforce.

"Whether a term is 'conspicuous' is a decision for the court." Ind. Code Ann. § 26–1–1–201(10). And, although a court may consider factors such as capitalization and font, the ultimate guiding factor is whether a reasonable person should have been on notice. *See, e.g., Indiana Farm Bureau*, 130 N.E.3d at 613 (noting that the "purpose of requiring the exclusionary language to be conspicuous is to ensure that the attention of the buyer can reasonably be expected to be brought to the language.") (citation omitted).

Here, Abby's Better had the opportunity to read the Warranty, and it accepted the Warranty's clear and unambiguous terms when it signed the Agreement. As such, Abby's Better was on notice that the express Warranty was "expressly in lieu of . . . all other . . . warranties, whether express or implied" and that BPI Equipment was making "no warranty . . . of merchantability or fitness for a particular purpose." As such, Life Butter – which was not even a party to the Agreement – should not now be able to avoid the clear import of this language. Instead, its claims for Breach of the Implied Warranty of Merchantability and Breach of the Implied Warranty of Fitness for a Particular Purpose should both be dismissed. *See, e.g., Swan Lake Holdings*, *LLC*, 2010 WL 3894576, at *5-6 (focusing not on font and capitalization but

instead on whether the buyer had the opportunity to read and sign the disclaimer before the sale was completed).[6]

## IV.    All of Life Butter's claims fail as a matter of law because Life Butter did not give BPI Equipment a sufficient opportunity to repair the Machine.

Under Indiana law, a party cannot bring claims for breach of either express or implied warranties unless they have first given the other party a reasonable opportunity to repair the defects. *See Zylstra*, 8 F.4th 597, 609 ("[J]ust as with a claim for breach of an express warranty, a buyer must give the warrantor a reasonable opportunity to cure any alleged defect in order to make a claim of breach of an implied warranty.") (citation omitted). Moreover, in Indiana, "two chances to perform repairs is not a reasonable opportunity to cure a defect <u>as a matter of law</u>." *Raymond*, 2023 WL 4930105, at *4 (emphasis added); *see also Litsinger*, 536 F. Supp. 3d at 367 ("In Indiana, even two chances to cure a defect isn't a reasonable opportunity to cure"); *Zylstra*, 8 F.4th at 609 (finding an insufficient opportunity to cure where "[e]ither the issue was never presented to [manufacturer] for repair, it was fixed under [manufacturer's] warranty in three or fewer attempts, or it was presented less than three times and [manufacturer] did not have a sufficient opportunity to repair.").

---

[6] In the event that the Court concludes that there is a question of fact as to whether the disclaimer of implied warranties was conspicuous, the Court should nonetheless enforce the limitation of liability contained in the Warranty and dismiss Life Butter's claims to the extent that it is seeking anything beyond the "cost of correcting any [] defect or replacing [any] defective part." Ind. Code Ann. § 26-1-2-316 provides that "[r]emedies for breach of warranty can be limited in accordance with the provisions of IC 26-1-2-718 and IC 26-1-2-719," neither of which require that the limitation be "conspicuous." And the Supreme Court of Indiana has stated that "[o]nly under 'extraordinary circumstances' may we decline 'to enforce a contract's plain and ordinary language,' such as when enforcement 'would lead to some absurdity, or some repugnance or inconsistency with the rest of the instrument.'" *U.S. Automatic Sprinkler Corp.*, 204 N.E.3d 215, 224 (Ind. 2023) (quoting *Hartman v. BigInch Fabricators & Constr. Holding Co.*, 161 N.E.3d 1218, 1224 (Ind. 2021)). No such circumstances exist here.

Case 3:24-cv-00602-FDW-SCR   Document 8   Filed 07/26/24   Page 12 of 16

Here, Life Butter alleges that (i) the Machine was delivered to Abby's Better's warehouse on May 1, 2023, (ii) representatives from BPI Equipment visited Abby's Better on two occasions in the next two months to "set up, install, and train Abby's [Better's] staff on the Machine's use;" and (iii) the Machine remains unable to "consistently function or remain operational." (Compl. ¶¶ 46-55.)  But BPI Equipment has not been provided any opportunity to repair any identified defect; and even if BPI Equipment's two visits to install the machine could constitute attempts to repair, they would still not constitute a sufficient opportunity to cure as a matter of law.

## **CONCLUSION**

For the reasons set forth above, Life Butters' claims against BPI Equipment should all be dismissed *with prejudice*.

This the 26th day of July, 2024.

**BRADLEY ARANT BOULT CUMMINGS LLP**

*/s/ C. Bailey King, Jr.*
C. Bailey King, Jr. (NC State Bar No. 34043)
Anna E. Hamel (NC State Bar No. 60906)
214 North Tryon Street, Suite 3700
Charlotte, NC 28202
Telephone: (704) 338-6027
Facsimile: (704) 332-8858
bking@bradley.com
ahamel@bradley.com

*Attorneys for Defendant BPI Equipment, Inc.*

## CERTIFICATE OF COMPLIANCE WITH WORD LIMITATION

Pursuant to Section 3.b.iv. of the Court's Initial Scheduling Order, the undersigned hereby certifies, subject to Rule 11, that this submission, inclusive of headings, footnotes, quotations and citations but exclusive of the case caption and all certificates of counsel, does not exceed 4,500 words, based on Microsoft Word's word count feature, and therefore complies with the Court's word limitation for preliminary motions.

This the 26th day of July, 2024.

*/s/ C. Bailey King, Jr.*
C. Bailey King, Jr.
*Attorney for Defendant BPI Equipment, Inc.*

## CERTIFICATION OF COMPLIANCE
## WITH STANDING ORDER ON ARTIFICIAL INTELLIGENCE

Pursuant to the Court's Standing Order regarding the Use of Artificial Intelligence, the undersigned hereby certifies as follows that (1) no artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in Westlaw; and (2) every statement and every citation to an authority contained in this document has been checked by an attorney in this case as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 26th day of July, 2024.

*/s/ C. Bailey King, Jr.*
C. Bailey King, Jr.
*Attorney for Defendant BPI Equipment, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of July, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send electronic notice to all counsel of record.

This the 26th day of July, 2024.

/s/ C. Bailey King, Jr.
C. Bailey King, Jr.
*Attorney for BPI Equipment, Inc.*